UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL INFORMATION SERVICES, INC. and E-BACKGROUNDCHECKS.COM, INC.<br><br>Defendants. | Case No. 3:13cv375<br><br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT<br>(Non-Jury) |

Plaintiff, Liberty Mutual Fire Insurance Company ("Liberty Mutual" or "Plaintiff") hereby files this First Amended Complaint for Declaratory Judgment against Defendants General Information Services, Inc. ("GIS") and E-Backgroundchecks.com, Inc. ("E-Backgroundchecks.com") (collectively, the "Defendants"), and alleges as follows:

1. This action seeks a declaration of the parties' rights and obligations under insurance contracts issued by Liberty Mutual to Defendants with respect to a lawsuit captioned *Henderson, et al. v. Backgroundchecks.com,* No. 3:13-cv-00029-REP (E.D. Va., Richmond Division) *("Henderson* Suit").

2. Upon information and belief, the defendant in the *Henderson* Suit, Backgroundchecks.com, is a "doing business as" name for E-Backgroundchecks.com.

3. As described in more detail below, the *Henderson* Suit alleges that Backgroundchecks.com, a consumer reporting agency, violated the Federal Fair Credit Reporting Act ("FCRA"), 15 U .S.C. § 1681, *et seq.,* by failing to "establish or to follow reasonable procedures to assure maximum possible accuracy" in the publication of Plaintiffs consumer reports, failing to provide Plaintiffs and others similarly situated with "a consumer disclosure" upon their request for same, and failing to "disclose the inquiries and reports

furnished to third parties."

4.     The *Henderson* Suit asserts one count on behalf of three of the individual named plaintiffs under 15 U.S.C. § 1681, as described more fully below, seeking actual damages and/or statutory damages, punitive damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681e(b), § 1681g(a), § 1681n, § 1681k(a), and § 1681o.

5.     The *Henderson* Suit asserts two Class Action Counts under 15 U.S.C. §1681k(a)(1) and § 1681g(a), respectively, as described more fully below, seeking injunctive relief, as well as statutory damages, punitive damages, attorney's fees and costs and equitable relief under 15 U.S.C. § 1681n, based upon an allegation that E-Backgroundchecks.com acted willfully.

6.     Liberty Mutual seeks declaratory judgment that it is not obligated, under commercial general liability and umbrella excess liability insurance contracts it issued, to provide a defense to Defendants for the *Henderson* Suit because, *inter alia,* the *Henderson* Suit does not seek covered damages because of "bodily injury," "property damage," "personal and advertising injury," "personal injury" or "advertising injury," as defined by the insurance contracts, does not allege that any such injury or offense or occurrence occurred during the policy periods of those insurance contracts, and seeks relief that is subject to certain exclusions in the insurance contracts.    In addition, Liberty Mutual seeks a declaration concerning the effect of other terms, conditions, exclusions, and limitations on the coverage, as further detailed below.

## PARTIES

7.     Liberty Mutual is a corporation organized under the laws of Wisconsin and qualified to conduct business in Virginia. At all times alleged herein, Liberty Mutual maintained its principal place of business in Massachusetts.

8.     Defendant General Information Services, Inc. is a South Carolina company with

its principal place of business in Chapin, South Carolina.

9.     Defendant E-Backgroundchecks.com, Inc. is a Texas company with its principal place of business in Dallas, Texas. Upon information and belief, E-Backgroundchecks.com does business as Backgroundchecks.com.

## JURISDICTION

10.    This action is brought pursuant to 28 U.S.C. §§ 1332, 2201, and 2202.

11.    There is complete diversity of citizenship between the Plaintiff, on the one hand, and the Defendants, on the other hand, and the amount in controversy as to each Defendant exceeds $75,000, exclusive of interest and costs.

12.    This Court has personal jurisdiction over the Defendants because they are found in this judicial district and because they conduct and transact business in this district, including that they have contracted to supply services to persons located in the Commonwealth of Virginia.

## VENUE

13.    Venue is proper pursuant to 28 U.S.C. §§ 1391(a)(l), (a)(2), and 139l(b) because the *Henderson* Suit is pending in this judicial district, and a substantial part of the events giving rise to Plaintiffs claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Policies

14.    Liberty Mutual issued to General Information Services, Inc., the following Commercial General Liability insurance contracts ("CGL Policies"):

> a.     Policy No. TB2-151-287029-027, for the period of January 19, 2007 to January 19, 2008 (a true and correct copy of this Policy is attached as <u>Exhibit 1</u>);
>
> b.     Policy No. TB2-151-287029-028, for the period of January 19, 2008 to January 19, 2009 (a true and correct copy of this Policy is attached as <u>Exhibit 2</u>).

15.     Liberty Mutual issued to General Information Services, Inc., the following Umbrella Excess Liability insurance contracts ("Umbrella Policies"):

>      a.     Policy No. TH2-651-287029-057, for the period of January 19, 2007 to January 19, 2008 (a true and correct copy of this Policy is attached as Exhibit 3);
>
>      b.     Policy No. TH2-651-287029, for the period of January 19, 2008 to January 19, 2009 (a true and correct copy of this Policy is attached as Exhibit 4).

16.     The CGL Policies contain a Named Insured endorsement that names "E-Backgroundchecks.com, Inc." as a Named Insured.

17.     The Umbrella Policies include under Section II – Who Is An Insured, "[a]ny other insured included in or added to an underlying policy, but not for broader coverage than is available under the underlying policy."

18.     The CGL Policies contain the following Insuring Agreement under Coverage A Bodily Injury and Property Damage Liability:

>      a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
>>      (1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>>
>>      (2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
>      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.
>
>      b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. Of Section II -Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such 'bodily injury" or "property damage" during or after the policy period will be deemed to have been know prior to the policy period.

19.     The CGL Policies contain the following Insuring Agreement under Coverage B

Personal and Advertising Injury Liability:

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in Section III -Limits Of Insurance;  and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

20.     The Umbrella Policies contain the following Insuring Agreement:

a.     We will pay those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages because of:

     (1)     bodily injury;

     (2)     property damage;

     (3)     personal injury; or

     (4)     advertising njury;

To which this policy applies.

This policy applies only to:

     (1)     **bodily injury** or **property damage** that:

        (a)     occurs during the policy period; and

        (b)     is caused by an occurrence.

     (2)     **personal injury** or **advertising injury** that is caused by an occurrence committed:

        (a)     during the policy period; or

        (b)     during the *of[sic]* a prior policy written by us which would have provided personal injury or advertising injury coverage except for the fact that the injury first resulted after the policy period of the prior policy.

b.     We will have the right and duty to defend any suit seeking damages covered by this policy. We will also defend any suit if the damages it seeks would be covered but for the retained limit. But:

     (1)     We have no duty to defend any **suit** if the damages it seeks are covered by any underlying policy or other insurance; (….)

21.     The CGL Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person. It includes death or mental anguish, which results from such physical harm, physical sickness or physical disease. Mental anguish means any type of mental or emotional illness or distress." The Umbrella Policies define "bodily injury" as "bodily injury,

sickness, or disease sustained by a person. **Bodily injury** includes death resulting from any of these at any time."

22. The CGL Policies and Umbrella Policies define "property damage" to include: "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

23. The CGL Policies define "personal and advertising injury" as:

    a.    Injury, including consequential "bodily injury'\ to the feelings and reputation of a natural person (including mental anguish) caused by an offense arising out of your business, except injury arising out of:

        (1)    your "advertisement", or

        (2)    publishing, broadcasting or telecasting done by or for you.

    b.    injury, including consequential "bodily injury", arising out of one or more of the following offenses:

        (1)    False arrest, detention or imprisonment;

        (2)    Malicious prosecution or abuse of process;

        (3)    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

        (4)    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        (5)    Oral or written publication of material that violates a person's right of privacy;

        (6)    The use of another's advertising idea in your "advertisement"; or

        (7)    Infringing upon another's copyright, trade dress or slogan in your "advertisement."

24.     The Umbrella Policies define "personal injury" as:

    a.     Injury to the feelings and reputation to a natural person; and

    b.     Injury to intangible property sustained by an organization arising out of one of more of the following offenses:

        (1)     False arrest; detention; or imprisonment;

        (2)     Malicious prosecution;

        (3)     Wrongful entry into or eviction of a person from a room, dwelling, or premises that the person occupies; or

        (4)     Oral or written publication of material that:

            (a)     slander or libels a person or organization

            (b)     disparages a person's or organization's good, products or services; or

            (c)     violates a person's right of privacy;

**but personal injury** does not include any injury within the definitions of **bodily injury, property damage** or **advertising injury**.

25.     The Umbrella Policies define "advertising injury" as:

**Advertising injury** means injury arising out of paid announcements in the print or broadcast media resulting in one of more of the following offenses:

    a.     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.     Oral or written publication of material that violates a person's right of privacy;

    c.     Copying a person's or organization's advertising ideas of advertising style; or

    d.     Infringement or copyright, title or slogan.

26.     The Policies contain a Violation of Statutes exclusion, which precludes coverage for "bodily injury," "property damage," "personal and advertising injury," "personal injury," and "advertising injury" "arising directly or indirectly out an any action or omission that violates or is

alleged to violate … [a]ny statute, ordinance or regulation …that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

27. The Policies contain the Employment-Related Practices exclusion, which precludes coverage for "bodily injury," "personal and advertising injury" or "personal injury" to a person arising out of any "[r]efusal to employ that person" or "[e]mployment-related

practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." This exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity."

28. The Umbrella Policies contain a Designated Professional Services Exclusion, which excludes coverage for "'[b]odily injury', 'property damage', 'personal injury' or 'advertising injury' arising out of the rendering of [or] failure to render the professional service(s) shown in the Schedule above." The Schedule states: "Description of Professional Services: 1. Information Research and Inquiries. Systems Design."

29. The CGL Policies and Umbrella Policies contain an exclusion for Expected Or Intended Injury, which precludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

30. The CGL Policies contain an exclusion for Knowing Violation Of Rights Of Another, which precludes coverage for "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'."

31. The CGL Policies contain an exclusion for Material Published With Knowledge Of Falsity, which precludes coverage for "'[p]ersonal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

32.     The CGL Policies contain an exclusion for Material Published Prior To Policy Period, which precludes coverage for "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

33.     The CGL Policies contain an exclusion for Unauthorized Use Of Another's Name Or Product, which precludes coverage "[a]rising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers."

34.     The CGL Policies contain an exclusion for Intentional Injury, which precludes coverage for "'[p]ersonal and advertising injury' arising out of an offense committed by or at the direction of the insured for purposes of causing injury."

35.     The CGL Policies contain a Professional Liability- Computer Data Processing exclusion, which precludes coverage for "bodily injury," "property damage" and "personal and advertising injury" "arising out of any act, error or omission with respect to data processing services rendered by the insured."

36.     The CGL Policies contain a Professional Liability Exclusion – Electronic Data, which precludes coverage for "bodily injury," "property damage" and "personal and advertising injury" "arising out of the rendering of, or failure to render, electronic data processing, computer consulting or computer programming services."

37.     The Umbrella Policies contain exclusions for **"[p]ersonal injury** or **advertising injury arising out of**:

    (1)     Oral or written publication of material:

         (a)     if done by or at the direction of the insured with knowledge of its falsity; or

         (b)     whose first publication took place before the beginning of this policy period.  This subparagraph (b) does not apply to

coverage provided [under] a.(2)(b) of the Insuring Agreement;

(2) The willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(3) An offense committed by or at the direction of the insured for the purpose of causing injury;

(4) Breach of contract, other [than] misappropriation of advertising ideas under [an] implied contract;

(5) The failure of goods, products or services to conform with advertised quality of performance;

(6) The incorrect description or mistake in the advertised price of goods, products or services;

(7) Patent infringement or securities fraud; or

(8) An offense committed by an insured whose business is advertising, publishing or telecasting."

38.     The Umbrella Policies contain a Professional Liability Exclusion - Electronic Data Processing Services And Computer Consulting Services Or Programming Services - With Bodily Injury Exception, which precludes coverage for "property damage," "personal injury" and "advertising injury" "arising out of the rendering of, or failure to render, electronic data processing, computer consulting or computer programming services, advice or instruction by:

1. The insured; or 2. Any person or organization: a. For whose acts, errors or omissions the insured is legally responsible; or b. From whom the insured assumed liability by reason of a contract or Agreement."

39.     The Umbrella Policies contain an Exclusion for Professional Liability - Computer Software, which precludes coverage for "bodily injury," "property damage," "personal injury," or "advertising injury" "arising out of the rendering of or failure to render any service by you or on your behalf in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs,

specifications, manuals and instructions."

40. The CGL Policies require that the insured notify Liberty Mutual "as soon as practicable" of an "occurrence" or offense which may result in a claim. The CGL Policies require the insured to notify Liberty Mutual "as soon as practicable" if a claim is made or a "suit" is brought against any insured.

41. The Umbrella Policies require that the insured "must notify us promptly of any occurrence to which this policy might apply." "If a claim is made or suit is brought to which this policy might apply, the insured must see to it that we receive prompt written notice of the claim or suit."

42. The CGL Policies and Umbrella Policies require that the insured must "'[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit'" and "[a]ssist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

43. The CGL Policies and Umbrella Policies provide that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

44. The CGL Policies provide that "[i]f the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them."

45. The Umbrella Policies provide that "[i]f the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured will do all that is necessary to secure such rights."

46. The CGL Policies contain an "Other Insurance" condition, which provides that

"[i]f other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited …." The "Other Insurance" condition contains additional provisions concerning the priority of coverage and potential sharing of coverage with other valid and collectible insurance.

47.     The Umbrella Policies provide that coverage is in excess of "retained limits." The definition of "retained limits" provides "the insured has **other insurance;** all amounts payable or retained under such **other insurance;** but not less than the amount shown in the Declarations as the Insured's Retention." This definition also provides that "[t]his policy will not apply under or contribute with any **other insurance** unless we so agree by endorsement to this policy."

48.     The CGL Policies have a Personal and Advertising Injury Limit of $1,000,000 "Any one person or organization" and a General Aggregate Limit of $2,000,000.  The Umbrella Policies have Bodily Injury, Property Damage, Personal Injury and Advertising Injury Limits of $5,000,000 each occurrence and a General Aggregate Limit of $5,000,000.  The CGL Policies and Umbrella Policies contain additional terms concerning determination and application of limits.

49.     The CGL Policies contain a Non-Cumulation of Liability – Same Occurrence provision, which states that "[i]f one 'occurrence' causes 'bodily injury' and/or 'property damage' during the policy period and during the policy period of one or more prior and/or future general liability policy(ies) issued to you by us, then this Policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such 'occurrence.'"

50.     The Umbrella Policies contain a Non-Cumulation of Liability – Same Occurrence provision, which states that "[i]f one **occurrence** causes **bodily injury, property damage, personal injury** and/or **advertising injury** during the annual period of this policy and

during one or more prior and/or future annual periods of either this policy or of any other umbrella excess liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us because of such **occurrence** under this policy (with respect to such prior and/or future annual period(s)) and/or under such other policy(ies)."

51.     The Umbrella Policies contain a Non-Pyramiding provision, which states that "[i]f this Coverage Form and any other Coverage Form or policy issued to you by us apply to the same "occurrence", the Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us specifically as excess insurance over this Coverage Form."

52.     The Policies contain additional terms, exclusions, limitations and conditions that may be potentially applicable to the *Henderson* Suit.

### The *Henderson* Suit

53.     The *Henderson* Suit was commenced by the filing of a Complaint on January 11, 2013. Since that time, a First Amended Class Complaint was filed on April 8, 2013, and a Second Amended Class Complaint was filed on April 30, 2013 (the "Second Amended Complaint"). The Second Amended Complaint was filed by Tyrone B. Henderson, Sr., Kelvin Thomas, Ronald Johnson, and Pamela Edwards on behalf of themselves and others similarly situated, against E-Backgroundchecks.com, "in its own name and trading as ebackgroundchecks.com." A true and correct copy of the Second Amended Complaint in the *Henderson* Suit is attached as <u>Exhibit 5</u>. The Second Amended Complaint alleges that "Backgroundchecks.com operates as a nationwide consumer reporting agency as governed by the FCRA in its own name and as "ebackgroundchecks.com." Second Amended Complaint, ¶16.

54.     With regard to the four individual plaintiffs, the Second Amended Complaint

alleges conduct in or after September, 2011.  Second Amended Complaint, ¶¶18, 22, 31, and 39.

55.    The Second Amended Complaint alleges that on November 9, 2011, plaintiff Henderson wrote to backgroundchecks.com and requested a copy of his full consumer file, including a list of all companies who requested or received his consumer reports.  Second Amended Complaint, ¶18.

56.    The Second Amended Complaint alleges that in September 2011, plaintiff Thomas applied for a job with Cableview Communications and that Cableview ordered a background report on Thomas from defendant on September 30, 2011.  Second Amended Complaint, ¶¶22, 25.

57.    The Second Amended Complaint alleges that in September 2011, plaintiff Johnson applied for a job with Catlee, Inc. and that defendant prepared and furnished a criminal records consumer report to Catlee in or about September 2011. Second Amended Complaint, ¶¶31, 33.

58.    The Second Amended Complaint alleges that in November 2012, plaintiff Edwards applied for a job with Enviroclean and that defendant prepared and furnished a report to Enviroclean "some time thereafter."  Second Amended Complaint, ¶¶39, 41.

59.    In their individual non-class Count, plaintiffs Thomas, Johnson, and Edwards allege a claim under 15 U.S.C. § 1681e(b). Plaintiffs Thomas, Johnson, and Edwards allege that they suffered actual damages, including loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.  Second Amended Complaint, ¶86.

60.    The Count by plaintiffs Thomas, Johnson, and Edwards alleges that the defendant acted willfully, rendering it liable pursuant to 15 U.S.C. § 168ln, or negligently, entitling plaintiffs Thomas and Johnson to recover under 15 U.S.C. § 1681o.  Second Amended Complaint, ¶87.

61.     The Second Amended Complaint contains two Class Action Counts.

62.     Count I is for "Violation Of The FCRA §1681k(a)(l)." The plaintiffs propose a "1681k National Class," a "1681k Fourth Circuit Sub-Class," a "1681k eleventh Circuit Sub-Class," and a "1681k Accuracy Sub-Class." Second Amended Complaint, ¶¶56-59.

63.     The proposed "168lk National Class" is defined as:

> All natural persons (a.) who were subject of a report sold by Defendant to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment, (c.) within five years next preceding April 18, 2013 through and during the pendency of this action, and (d.) to whom Defendant did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, offices, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

Second Amended Complaint, ¶56.

64.     The proposed "1681k Fourth Circuit Sub-Class" is defined as:

> All natural persons residing in Virginia, North Carolina, South Carolina, Maryland or West Virginia (a.) who were the subject of a report sold by Defendant to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment (c.) within five years next preceding the filing of this action and during its pendency, and (d) to whom Defendant did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, offices, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

Second Amended Complaint, ¶57.

65.     The proposed "1681k Eleventh Circuit Sub-Class" is defined as:

> All natural persons residing in Alabama, Florida, or Georgia (a.) who were the subject of a report sold by Defendant to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one public records of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment (c.)[SIC] within five years next preceeding April 8, 2013 through and during the pendency of this action, and (d.) to whom Defendant did not place in the United States mail postage pre-paid,

on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney in this case, and any judge assigned to hear this action.

Second Amended Complaint, ¶58.

66.     The proposed "1681k Accuracy Sub-Class" is defined as:

All natural persons residing in Virginia, North Carolina, South Carolina, Maryland, or West Virginia (a.) who were the subject of a report sold by Defendant to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one public records of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment (c.)[SIC] within five years next preceding the filing of this action and during its pendency, (d.) when a manual review of the record would reveal that the identity associated with the public record does not match the identity of the class member about whom the report was furnished (e.) to whom Defendant did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney in this case, and any judge assigned to hear this action.

Second Amended Complaint, ¶59.

67.     With regard to Count I, the Second Amended Complaint alleges that "Defendant's failure to timely provide the required FCRA notices to the Plaintiffs Thomas, Johnson, Edwards, and other members of the putative class violated 15 U.S.C. § 1681k(a)(l)." Second Amended Complaint, ¶66.

68.     With regard to Count I, the Second Amended Complaint alleges that "[t]he conduct, action, and inaction of Defendant was willful, rendering Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n." Second Amended Complaint, ¶67.

69.     With regard to Count I, the Second Amended Complaint also seeks "appropriate equitable relief." Second Amended Complaint, ¶68.

70.     With regard to Count I, the Second Amended Complaint alleges, "[a]s a result of these FCRA violations, Defendant is liable to Plaintiffs Thomas, Johnson, and Edwards and

to each Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(l)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for attorneys fees and costs pursuant to § 168ln." Second Amended Complaint, ¶69.

71.    Count II is for "Violation Of the FCRA §168lg(a)."  The plaintiffs propose a "1681g No Report Class," and a "1681g Incomplete Disclosure Class."  Second Amended Complaint, ¶¶71-72.

72.    The proposed "1681g No Report Class" is defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who requested their consumer file from backgroundchecks.com, (b.) within five years next preceding April 18, 2013 through and during its pendency of this action, and (c.) in response to the communications, backgroundchecks.com did not provide a copy a consumer report because it had not previously sold a report regarding that consumer to a third party. Excluded from the class definition are any employees, officers, directors of Defendant, and attorney appearing in this case, and any judge assigned to hear this action.

Second Amended Complaint, ¶71.

73.    The proposed "1681g Incomplete Disclosure Class" is defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who requested their consumer file from backgroundchecks.com (b.) within five years next preceding the filing of this action and during its pendency, and (c.) about whom a backgroundchecks.com report had been furnished to a third party end-user or reseller-user (1.) for employment purposes, during the 2-year period preceding the date on which the consumer's request for the report made, or (2.) for any other purpose, during the 1-year period preceding the date on which the request was made. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

Second Amended Complaint, ¶72.

74.    With regard to Count II, the Second Amended Complaint alleges that "Defendant's failure to disclose the inquiries and reports furnished to third parties violated 15 U.S.C. § 1681g(a)(3) as to the Plaintiffs Thomas, Johnson and Edwards and other members of the Section 1681g Incomplete Disclosure class."  Second Amended Complaint, ¶79.

75.     With regard to Count II, the Second Amended Complaint alleges that "Defendant's failure to provide a consumer disclosure to consumer who requested one, but had not previously been the subject of a consumer report sold to a third party violated 15 U.S.C. § 1681g(a)(1) ad to Henderson and other members of the Section 1681g No Report class." Second Amended Complaint, ¶80.

76.     With regard to count II, the Second Amended Complaint alleges that "[t]he conduct, action, and inaction of Defendant was willful, rendering Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n." Second Amended Complaint, ¶81.

77.     With regard to Count II, the Second Amended Complaint alleges that "[p]laintiffs and other members of the putative class members are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n." Second Amended Complaint, ¶82.

78.     With regard to Count II, the Second Amended Complaint alleges that "[a]s a result of these FCRA violations, Defendant is liable to Plaintiffs and to each Section 1681g Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §168ln(a)(l)(A), plus punitive damage pursuant to 15 U.S.C. § 168ln(a)(2), for attorneys' fees and costs pursuant to§ 1681n." Second Amended Complaint, ¶83.

79.     The Second Amended Complaint contains the following Prayer:

WHEREFORE, Plaintiffs and the Class Members pray for relief as follows:

    a.     That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Class;

    b.     That judgment be entered for Plaintiffs individually against Defendant for actual and/or statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o;

c. That judgment be entered for the class against Defendant for statutory damages and punitive damages for violation of 15 U.S.C. §§ 1681k(a) and 1681g(a) pursuant to 15 U.S.C. § 1681n. That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

d. That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief that may be permitted.

## Liberty Mutual's Coverage Position

80. Concurrently with the filing of its original Complaint for Declaratory Judgment filed on June 12, 2013, Liberty Mutual issued a letter addressed to GIS, advising of its coverage position. A true and correct copy of this letter is attached as <u>Exhibit 6</u> hereto. In this letter, Liberty Mutual advised GIS that coverage is unavailable under the CGL Policies and Umbrella Policies for the *Henderson* Suit, because, *inter alia,* the Complaint does not seek relief because of "bodily injury" and "property damage," as defined in the Policies; the Count in the Complaint of the individual named plaintiffs does not allege or involve any "occurrence" or offense during the policy periods of the Policies; the Class Counts in the Complaint do not seek relief because of "personal and advertising injury," as defined in the CGL Policies, and "personal injury" and "advertising injury," as defined in the Umbrella Policies; coverage is precluded by the Violation of Statutes exclusion in the Policies; coverage is precluded or limited by the Employment-Related Practices exclusion in the Policies; coverage under the Umbrella Policies is precluded by the Designated Professional Services Exclusion in those policies; and coverage may be unavailable or limited by additional terms, exclusions, conditions and limitations in the Policies. Liberty Mutual reserved all rights in this letter.

## FIRST CAUSE OF ACTION
### (Declaration of Duty to Defend)

81. Liberty Mutual incorporates the allegations in Paragraphs 1-80 as if fully re-alleged herein.

82.     Liberty Mutual has disclaimed a duty to defend Defendants under the Policies for

the *Henderson* Suit, based upon but not limited to the following reasons:

    a.    The *Henderson* suit does not seek relief because of "bodily injury" and "property damage," as defined in the Policies;

    b.    The Count of the individual named plaintiffs in the *Henderson* suit does not allege or involve any "bodily injury," "property damage," "occurrence" or offense that occurred or was committed during the policy periods of the Policies;

    c.    The individual and/or Class Counts in the *Henderson* suit do not seek relief because of "personal and advertising injury," as defined in the CGL Policies, and "personal injury" and "advertising injury," as defined in the Umbrella Policies;

    d.    Coverage is precluded by the Violation of Statutes exclusion in the Policies;

    e.    Coverage is precluded of limited by the Employment-Related Practices exclusion in the Policies;

    f.    Coverage under the Umbrella Policies is precluded by the Designated Professional Services Exclusion; and

    g.    Coverage is unavailable or limited by additional terms, conditions, limitations and exclusions under the Policies.

83.     Defendants contend that Liberty Mutual has a duty to defend them under the

Policies for the *Henderson* Suit. An actual controversy exists, and Liberty Mutual has no

adequate remedy at law to resolve this controversy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Liberty Mutual prays that the Court enter judgment in its

favor as follows:

    A.    Declaring that Liberty Mutual has no duty to defend Defendants under the Policies for the *Henderson* Suit, or in the alternative, that any duty to defend by Liberty Mutual is limited by the terms, conditions, exclusions, and limitations of the Policies; and

    B.    Such additional declaratory and other relief as shall be found to be just and proper under the circumstances.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY


By: /s/ Gary R. Reinhardt
Gary R. Reinhardt  VSB# 32781
COUNSEL FOR PLAINTIFF
KALBAUGH PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Gary.Reinhardt@kpmlaw.com

John N. Love (pro hac vice)
Robins, Kaplan, Miller & Ciresi, LLP
800 Boylston Street, 25th Floor
Boston, Massachusetts  02199
(617) 267-2300
(617) 267-8288 (fax)
JNLove@rkmc.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September, 2013, I filed a true and accurate copy of the foregoing electronically with the Clerk of Court using the CM/ECF system, which will cause a copy of the same to be sent to all counsel and parties of record.


/s/ Gary R. Reinhardt
Gary R. Reinhardt  VSB# 32781
COUNSEL FOR PLAINTIFF
KALBAUGH PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Gary.Reinhardt@kpmlaw.com