# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

Liberty Mutual Fire Insurance Company,

        Plaintiff,

    v.

General Information Services, Inc.
and E-Backgroundchecks.com, Inc.,

        Defendants.

Civil Action No.  3:13CV375

## PLAINTIFF LIBERTY MUTUAL FIRE INSURANCE COMPANY'S PRETRIAL BRIEF

## I.     INTRODUCTION

Liberty Mutual filed this lawsuit to obtain a declaration that it has no duty under its insurance policies to defend its insured, E-Backgroundchecks.com ("BCG"), against the class action lawsuit filed against it titled *Tyrone B. Henderson, Sr., et al. v. E-Backgroundchecks.com* also pending in this Court.   (The "Henderson Suit", Exhibits 5-7).[1]  The Henderson Suit consists of both individual and class claims.  There is no duty to defend against the individual claims because they are based entirely on conduct in 2011 and 2012, more than two years after the expiration of the final Liberty Mutual policy.  There is no duty to defend the class action claims because, contrary to BCG's argument, they do not seek damages because of "personal and advertising injury" or "personal injury" as defined in the Liberty Mutual policies.  (Exhibits 1-4).  Instead, they seek only uniform statutory damages for BCG's alleged failure to provide statutorily required notices or copies of reports to the people about whom they issued

---

[1] The Exhibits referenced in this brief have been provided to the Court with the parties' Second Set of Stipulations.

background reports. In addition, all of the claims in the Henderson Suit fall within exclusions in the Liberty Mutual policies.

## II. STATEMENT OF FACTS

The Parties have agreed upon the key facts and exhibits in the Second Set of Stipulations previously filed. BCG is an insured under the policies that Liberty Mutual issued to General Information Services, Inc. ("GIS"). (Stipulation Nos. 6 and 8 of the Second Set of Stipulations). The Parties have stipulated that for the purposes of determining whether Liberty Mutual has a duty to defend BCG against the Henderson Suit, it is sufficient to determine whether the allegations of the Second Amended Class Complaint (Exhibit 7) triggers a duty to defend under the Liberty Mutual policies during the period of 2008-2009 (Exhibits 2 & 4). (Stipulation No. 4 of the Second Set of Stipulations.)

A review of Exhibit 7 demonstrates that the Henderson Suit is based entirely on alleged violations of the Federal Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* All claims of the individual plaintiffs in the Henderson Suit are based upon alleged conduct of BCG in 2011 and 2012, as discussed in more detail later in this brief. The Liberty Mutual policies cover two consecutive periods, January 19, 2007 to January 19, 2008 (Exhibits 1 & 3) and January 19, 2008 to January 19, 2009 (Exhibits 2 & 4). When BCG was served with the Henderson Suit, it did not tender defense to Liberty Mutual, but instead tendered defense to other insurers in the CHUBB Group that issued policies covering the period from January 19, 2012 to January 19, 2013. (Stipulation No. 5 of the Second Set of Stipulations, Exhibits 10-11 and Exhibits 12-13). That tender was consistent with the fact that the claims of the individual plaintiffs are based on alleged conduct in 2012, rather than on any conduct of BCG in 2007-2009. And CHUBB agreed to defend BCG under a reservation of rights. (Exhibit 12, page 5, Section I).

35498200.1

CHUBB then tendered the defense of BCG to another insurer, The Hartford, that issued

policies covering BCG from January 19, 2009 to April 6, 2011, and from April 6, 2011 to April

6, 2013. (Exhibit 14; Exhibit 15 pages 3-4.) CHUBB also tendered defense of BCG to Liberty

Mutual under its policies providing insurance from January 19, 2007 to January 19, 2008 and

January 19, 2008 to January 19, 2009. (Exhibit 8).

Liberty Mutual denied any duty to defend BCG under its policies. (Exhibit 9). Liberty

Mutual commenced this declaratory judgment action to confirm its coverage decision.

## III. LEGAL STANDARD FOR DUTY TO DEFEND

The Parties have stipulated that South Carolina law applies. (Stipulations Nos. 6 and 7 of

the Second Set of Stipulations). As stated by the Supreme Court of South Carolina, "in an action

for declaratory judgment, the obligation of a liability insurance company to defend and

indemnify is determined by the allegations in the complaint." *Collins Holding Corp. v. Wausau

Underwriters Ins. Co.*, 666 S.E. 2d 897, 899 (S.C. 2008.) Just as in Virginia, the court analyzes

the allegations of the underlying complaint against BCG to determine whether they fall within

the scope of the coverage of the liability insurance policy.

> If the facts alleged in the complaint fail to bring a claim within the policy's
> coverage, the insurer has no duty to defend. *Id.*

As in other jurisdictions, the insured must show that the underlying complaint creates a

"reasonable possibility" of coverage under the insurance policy. *Gordon-Gallup Realtors Inc. v.

Cincinnati Ins. Co.*, 265 S.E. 2d 38, 40 (S.C. 1980). The insured bears the burden to show that

its claim falls within the policy's coverage. *Sunex Int'l, Inc. v. Travelers Indem. Co.*, 185

F.Supp.2d 614, 617 (D. S.C. 2001). Only then would the burden shift to the insurer to show that

an exclusion applies. *Id.*

The general rules of contract construction apply to insurance policies in South Carolina.

- 3 -

*CRC Scrap Metal Recycling, LLC v. Hartford Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 147696 at *7 (D.S.C. October 15, 2012). The insurance policy must be read as a whole, considering all of its provisions together. *Id.* If the intention of the parties is clear, the policy language must not be stretched to create coverage never intended by the parties. *Id.*

## IV. ARGUMENT

### A. The Individual Claims Are Not Within the CGL Policy Periods

The Liberty Mutual policies provided CGL liability insurance coverage to BCG during two policy periods from January 19, 2007 to January 19, 2008 and January 19, 2008 to January 19, 2009. The earliest conduct alleged by any of the four individual plaintiffs was in September 2011, more than two and a half years after expiration of the Liberty Mutual policies.

Throughout the 18 page Second Amended Class Complaint, there is not a single reference, let alone allegation, of any conduct by BCG pertaining to the four individual plaintiffs that occurred during the two years that Liberty Mutual provided insurance coverage to BCG. Plaintiff Thomas alleges that he applied for a job in September 2011 (Exhibit 7, Paragraph 22). He alleges that his prospective employer "ordered a background report on Thomas from BCG on September 30, 2011." (Exhibit 7, Paragraph 25). Plaintiff Johnson alleges that he applied for a job in September 2011 (Exhibit 7, Paragraph 31). He alleges that BCG "prepared and furnished a criminal records consumer report on Johnson to Catlee in or about September 2011." (Exhibit 7, Paragraph 33). Plaintiff Edwards alleges that she applied for a job with Enviroclean in November 2012. (Exhibit 7, Paragraph 39). She alleges that "at some time thereafter, Enviroclean ordered a background report on Edwards from [BCG]". Finally, Plaintiff Henderson does not even allege that BCG ever provided a background check on him, but instead alleges that "on November 9, 2011, Plaintiff Tyrone B. Henderson, Sr. wrote to

35498200.1

Backgroundchecks.com and requested a copy of his full consumer file...." (Exhibit7, Paragraph 18). Plaintiff Henderson alleges that he received no response to his request, in violation of the Fair Credit Reporting Act. (Exhibit 7, Paragraph 21).

Plaintiffs Thomas, Johnson and Edwards allege that they did not receive the jobs they were seeking in 2011 and 2012 because of serious errors in the background check reports provided by BCG. (Exhibit 7, Paragraph 3). They allege that they did not receive the statutorily required notice from BCG that it had issued a background check report on them, and that BCG failed to correct the errors in their reports and also failed to provide all of the information in its files to them. (Exhibit 7, Paragraphs 28-30, 36-38, and 45-47).

BCG's claim for a defense under the Liberty Mutual CGL policies is based on the coverage for "personal and advertising injury liability". (Second Amended Counterclaims of General Information Services and E-Backgroundchecks.com, Docket No. 42, Paragraphs 60-62). This coverage includes "injury...to the feelings and the reputation of a natural person...caused by an offense arising out of your business...." (Ex. 2, page 12, item 2a). It also includes injury arising out of certain enumerated offenses, including "oral or written publication of material that slanders or libels a person...." (Ex. 2, page 13, item 2b(4)). But the policies expressly require that the offenses have been "committed in the coverage 'territory' during the policy period." (emphasis added). (Ex. 2, page 10, item 1b.) None of the four individual plaintiffs' claims satisfies the requirement of the Liberty Mutual policies that the offense be committed during the policy period.

While the claims of the individual plaintiffs[2] may include injury to their feelings or

_____

[2] Plaintiff Henderson does not allege that BCG issued an erroneous background report on him that might constitute "publication of material that slanders or libels". Nor does he allege injury to his feelings or reputation. But even if the allegation that he disputed an inaccurate felony

35498200.1

reputations and publication of material that slanders or libels them, they explicitly allege that these offenses and their injuries occurred not during the Liberty Mutual policy periods from June 19, 2007 to June 19, 2009, but rather in 2011 and 2012. The individual plaintiffs not only fail to allege an offense during the period of the Liberty Mutual policies, they make clear that the offenses that pertain to them occurred more than two and a half years after the expiration of the final Liberty Mutual policy. Therefore, the claims of the individual plaintiffs in the Henderson Suit do not trigger a duty to defend under the Liberty Mutual policies.

This mismatch of timing between the periods covered by the Liberty Mutual policies and the period when BCG allegedly harmed the individual plaintiffs also explains one reason why BCG did not tender defense of the Henderson Suit to Liberty Mutual. (Stipulation No. 5 of Second Set of Stipulations). Instead, it tendered defense to the insurers that provided coverage in 2012 when the offenses alleged by the individual plaintiffs occurred. (*Id.*) Those two insurers are part of the CHUBB group of companies. Liberty Mutual received notice of the Henderson Suit only because CHUBB attempted to shift all or part of the responsibility of defending the Henderson Suit onto Liberty Mutual and The Hartford. (Exhibit 8).

B. **The Class Claims Do Not Trigger Coverage Under the CGL Policies**

The class action claims in the Henderson Suit fail to trigger a duty to defend under the Liberty Mutual CGL policies for a different reason. Unlike the claims of the individual plaintiffs, at least some of the classes are defined in the Henderson Suit to include people on whom BCG may have issued background reports during the period of one or both of the Liberty Mutual policy periods. But none of the class action claims alleged seeks damage because of any

---

conviction that he believed BCG maintained in its file could be read as alleging injury to his feelings or reputation, he alleges this occurred in November 2011, long after the expiration of the Liberty Mutual policies.

35498200.1

injury covered by the Liberty Mutual policies.

1.    No Claim of "Personal or Advertising Injury"

The Liberty Mutual policies contain a duty to defend lawsuits seeking "damages because of 'personal and advertising injury' to which this insurance applies." BCG bases its duty to defend claim on the following portions of the CGL policies' definition of "personal and advertising injury":

a)    injury …to the feelings and reputation of a natural person…;
b)    injury…arising out of…:

* * *

(4)    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(Second Amended Counterclaims, Docket No. 42, Paragraph 62).

The statutory damages sought by the class members are not damages because of personal and advertising injury, such as injury to their feelings or reputation, or publication of material that slanders or libels them. To the contrary, all of the class action claims explicitly state that they are limited to BCG's alleged failure to provide notice to the subject of a background report when such a report was issued (Exhibit 7, Count I, Paragraph 66), or the alleged failure to provide a disclosure to consumers who requested one (Exhibit 7, Count II, Paragraphs 79-80).

All of the class action claims are contained in Counts I and II of the Henderson Suit. In both Counts, the claims are strictly limited to the notice and disclosure issues described above, and do not include allegations of injury to class members feelings or reputation, or any slander or libel of class members. Paragraph 61 of Count I states:

Without limitation, the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant sent the required notices, when it did so and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices. Even the appropriate amount of uniform, statutory and/or punitive damages under 15

35498200.1

U.S.C. §1681n is a common question. (Ex. 7, Paragraph 61). (Emphasis added).

Similarly, Paragraph 74 of Count II states:

> Without limitation, the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant disclosed the inquiries in its consumer disclosures, whether it was Defendant's policy or procedure to refuse to provide a consumer report disclosure pursuant to 15 U.S.C. §1681g(a) if Defendant had not previously furnished the consumer's report to a third party, whether it was required to do these things, and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or completeness of this information. Even the appropriate amount of uniform, statutory and/or punitive damages under 15 U.S.C. §1681n is a common question. (Exhibit 7, Paragraph 74). (Emphasis added).

The damages requested in the two class action claims do not include any amounts for injury to the feelings or reputation of class members or for any publication of material that slanders or libels the class members. Instead, they seek "equitable injunctive relief" (Exhibit 7, Paragraph 65 and 78), (Exhibit 7, Paragraphs 69, 74 and 83) and uniform "statutory damages from $100 to $1,000 for alleged failures to provide statutorily required notices and disclosures. This stands in sharp contrast to the relief sought by the individual plaintiffs[3] in Count III for BCG's alleged conduct in 2011-2012. The individual plaintiffs seek "actual damages" under 15 U.S.C. §1681n, including "loss of employment, damage to reputation, embarrassment, humiliation, and other emotional and mental distress." (Exhibit 7, Paragraphs 86 and 88). Rather than seeking damages because of BCG's alleged providing of background reports with erroneous information to prospective employers, the class claims seek uniform statutory damages for BCG's alleged failure to provide certain notices and disclosures to the class members themselves.

A class consisting of all people about whom BCG issued a background check report

---

[3] Count III applies only to Plaintiffs Thomas, Johnson and Edwards, but not to Plaintiff Henderson. (Exhibit 7, Paragraphs 85, 87-88).

35498200.1

during a five year period could never be certified if each class member sought to prove that he or she was actually embarrassed or humiliated or slandered or libeled by a background report, and then to prove the actual damages he or she suffered as a result. Therefore, Counts I and II of the Henderson Suit make clear that no "damages because of 'personal and advertising injury'" are sought, and the class claims do not trigger a duty to defend BCG under the Liberty Mutual policies.

 2. None of the Other Coverages of the Liberty Mutual CGL Policies Apply to the Henderson Suit

In addition to the "Personal and Advertising Injury Liability" coverage, the Liberty Mutual CGL policies also provide "Bodily Injury and Property Damage Liability" coverage. (Exhibit 2, page 57). BCG does not claim that Liberty Mutual has a duty to defend under the "Bodily Injury and Property Damage Liability" coverage because it clearly has no application to the Henderson Suit (Second Amended Counterclaims, Docket no. 42, Paragraphs 60-62). There are no allegations of "bodily injury" in the Henderson Suit, either for the individual plaintiffs or the class members. The policies define "bodily injury" as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by any person. It includes death or mental anguish which results at any time from such physical harm, physical sickness or physical disease. Mental anguish means any time of mental or emotional illness or distress. (Exhibit 2, page 21).

There are no allegations of physical harm, physical sickness or physical disease that would trigger coverage for mental anguish.

Similarly, there are no allegations of "property damage" by either the individual plaintiffs or the class members in the Henderson Suit. The Liberty Mutual policies define "property damage" to mean:

> (a) Physical injury to tangible property, including all resulting loss of use of that property.

\* \* \*

(b)     Loss of use of tangible property that is not physically injured.

\* \* \*

(Exhibit 2, pages 70-71, Item 17).

The Henderson Suit is devoid of any allegation about any tangible or intangible property of the individual plaintiffs or class members.

In addition, the Liberty Mutual policies require that the "bodily injury" or "property damage" "occurs during the policy period". (Exhibit 2, page 57, Item 1b.(2)).  Again, there is no allegation of any "bodily injury" or "property damage" that occurred during the Liberty Mutual policy periods from January 19, 2007 to January 19, 2009.

### C.     The Same Analysis Applies Under the Umbrella Excess Policies

#### 1.     The Individual Claims

The policy periods of the Liberty Mutual Umbrella Excess policies are the same as those for the Liberty Mutual CGL policies.  (Exhibit 3 has the same policy period as Exhibit 1; Exhibit 4 has the same policy period as Exhibit 2).   Like the CGL policies, the Umbrella Excess policies require an offense be "during the policy period" (emphasis added) (Exhibit 4, page 12, item 1e(1)).  None of the conduct alleged occurred during the policy periods of the Liberty Mutual Umbrella Excess policies.  Therefore, the claims of the four individual plaintiffs based on alleged conduct of BCG in 2011 and 2012 do not trigger coverage under the Umbrella Excess policies for the same reasons that they do not trigger coverage under the CGL policies as discussed under Subheading A above.

#### 2.     The Class Action Claims

The pertinent language in the Liberty Mutual Umbrella Excess policies is nearly identical to that in the Liberty Mutual CGL policies previously discussed.  The only significant

35498200.1

differences are that the "personal and advertising injury" coverage in the CGL policies is split into separate coverage for "personal injury" and for "advertising injury" in the Umbrella Excess policies. (Exhibit 4, page 11, item 1a.(3) and (4)). The Umbrella Excess policy definition of "personal injury" is identical, in all respects material to the Henderson Suit, to the definition of "personal and advertising injury" in the CGL policies (Exhibit 4, page 67, item 9). It includes injury to the feelings or the reputation of a natural person, and publication of material that slanders or libels a person. Therefore, the arguments set forth under Subheading B above with respect to the "personal and advertising injury" coverage of the CGL policies apply with equal force to the "personal injury" coverage of the Umbrella Excess policies.

The coverage for "advertising injury" in the Umbrella Excess policies has no applications to the Henderson Suit. It applies only to injuries "arising out of paid announcements in the print or broadcast media...." (Exhibit 4, page 9, item 1). There is no allegation in the Henderson Suit about any paid announcements or about advertising of any kind.

The Umbrella Excess policy definition of "bodily injury" is the same as the definition in the CGL policies, except that it does not reference mental anguish (Exhibit 4, page 65, item 3). The definition of "property damage" is identical in both the Umbrella Excess policies and the CGL policies. Therefore, the allegations in the Second Amended Class Complaint do not fall within the scope of "bodily injury" or "property damage" of the Umbrella Excess policies for the same reasons that those allegations do not fall within the scope of the same terms in the CGL policy.

D.     The Violation of Statutes Exclusions Bars Any Duty to Defend in This Case

All of the Liberty Mutual policies, both CGL and Umbrella Excess[4], exclude:

---

[4] The Umbrella Excess policies substitute "personal injury or advertising injury" for the phrase

35498200.1

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*\*\*

c.    Any statute, ordinance, or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information. (Exhibit 2, page 22, item B2).

This exclusion broadly applies to injury <u>arising</u>, either directly or <u>indirectly</u>, out of <u>any action or omission</u> that violates such a statute. As set forth in the Second Amended Class Complaint, the Henderson Suit seeks relief for "violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, et seq." (Exhibit 7, Paragraph 1). All of the conduct complained of in the Second Amended Class Complaint are alleged violations of the FCRA. The Second Amended Class Complaint repeatedly alleges violations of this statute. (Exhibit 7, Paragraphs 3, 4, 5, 21, 29, 37, 46, 49, 50, 51, 52, 53, 54, 56, 57, 58, 59, 61, 66, 67, 68, 69, 71, 72, 74, 79, 80, 81, 82, 83, 85, 87, 88). The prayer for relief in the Second Amended Complaint seeks damages only for violation of the FCRA. (Exhibit 7, pages Pages 17 and 18). Even BCG is forced to describe the Henderson Suit as alleging "that BCG violated the Fair Credit Reporting Act". (Second Amended Counterclaims, Docket No. 42, Paragraph 9.)

The FCRA is a statute that "prohibits or limits the sending, transmitting, communicating or distribution of material or information" as set forth in the Violation of Statutes exclusion in the Liberty Mutual policies. *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1340 (S.D. Fla. 2009). The exclusion in that case was identical to the exclusion in the Liberty Mutual Policies. *Id.* at 1339-1340. The underlying complaint against the insured involved alleged violations of the Fair Credit Reporting Act, but a different subsection than the ones involved in the current lawsuit. The court applied the violation of statute exclusion to rule

"personal and advertising injury" in this exclusion. (Exhibit 4, Page 38.

35498200.1

that there was no duty to defend the insured against that lawsuit. *Id.* at 1340.

The Second Amended Class Complaint relies on Section 1681k(a)(1) of the FCRA that

prohibits BCG from issuing a consumer report unless BCG

> "notifies the consumer that public record information is being reported about him
> or her and identifies the person to whom the report is being sent".
> (See Exhibit 7, Paragraphs 29, 37, 46, 49, 56-59, 66).

All of the alleged "personal and advertising injury" in the Second Amended Complaint arises

directly from alleged violations of the FCRA. Even if the alleged injuries arose only indirectly

out of alleged violations of FCRA, the exclusion still explicitly applies. Courts have applied this

same exclusion to uphold a denial of a duty to defend claims against an insured based on a

variety of statutes. *PA. Nat'l Mut. Cas. Ins. Co. v. Sharpe Images, Inc.*, 212 U.S. Dist. LEXIS

128749 (W.D. N.C. (September 11, 2012) (claims based on the North Carolina Trade Secret

Act); *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 2013 U.S. Dist. LEXIS 100757 (C.D.

Cal. July 10, 2013) (applying exclusion to alleged violation of California statute protecting

personal identification information in credit card transactions).

### E.     The Employment-Related Practices Exclusion

The Henderson Suit focuses on BCG's alleged conduct in providing background reports

to potential employers. Paragraph 2 of the Second Amended Class Complaint states that BCG

maintains an extensive database of public records, sells consumer reports generated from the

database to other consumer reporting agencies "that rebrand them and sell them to the potential

employers for the plaintiffs and putative class members". (Exhibit 7, Paragraph 2). (Emphasis

added). Individual plaintiffs, Johnson, and Edwards specifically allege that BCG sold their

prospective employers background reports that resulted in plaintiffs not getting the jobs they

sought. (Exhibit 7, Paragraphs 3, 22-27, 31-35, 39-44). As for the class action claims, the

35498200.1

Second Amended Complaint states under the heading "Facts Common to All Class Members" that:

> Despite providing a report for <u>employment purposes</u>...Defendant failed to provide [the statutorily required notice]. (Exhibit 7, Paragraph 48). (Emphasis added).

All of the Liberty Mutual policies exclude injury to:

> (1) A person arising out of any:
>
>> (a)    Refusal to employ that person
>>
>>                    ***
>
> This exclusion applies:
>
>> (1)    Whether BCG may be liable as an employer or in any other capacity; [5]

(Exhibit 2, page 53, item C; Exhibit 4, page 6).

Because the Second Amended Class Complaint alleges injuries arising out of BCG's alleged conduct in providing background reports to prospective employers, it falls within the scope of the Employment-Related Practices Exclusion. The Supreme Court of South Carolina indicated that reports conveyed to potential employers fall within the scope of this exclusion. *Owners Ins. Co. v. Clayton*, 614 S.E. 2d 611, 615 (S.C. 2005). In that case, the court declined to apply the exclusion because the insured conveyed information to a former employee's acquaintance and associate in a separate business. The court contrasted that fact from a situation such as the current lawsuit by stating:

---

[5] The language quoted above is from the Liberty Mutual CGL policies. The umbrella/excess policies contain the same language except they apply the exclusion to "refusal to employ or promote that person".

35498200.1

The information was not being relayed to other employees to explain Clayton's termination <u>nor was it conveyed to persons such as potential employers</u> who are inquiring about Clayton's performance as an employee. *Id.* (Emphasis added).

The fact that BCG itself was not an employer or prospective employer of the individual Plaintiffs or Class members does not prevent the application of this exclusion in the Liberty Mutual Polices. The exclusion expressly provides that it applies "whether BCG may be liable as an employer or in any other capacity."

There can be no doubt that the allegations pertaining to individual plaintiffs Thomas, Johnson, and Edwards and to all of the classes defined in Count I of the Second Amended Class Complaint fall within the scope of the Employment-Related Practices Exclusion. While it is true that the allegations specific to plaintiff Henderson do not reference employment, his claim is subject to Paragraph 2 of the Second Amended Complaint describing BCG's business as providing reports for sale to "potential employers". (Exhibit 7, Paragraph 2). Similarly, while the classes described in Count II refer to "a consumer report" rather than a report for "employment purpose" as in Count I, Count II is still subject to the "Facts Common to All Class Members" alleging that BCG provided a "report for employment purposes". (Exhibit 7, Paragraph 48). But even if this exclusion did not apply to individual plaintiff Henderson or any of the classes in Count II of the Second Amended Complaint, there would still be no duty to defend for all of the reasons previously set forth in this brief.

## V.     CONCLUSION

Liberty Mutual respectfully asks this Court to declare that it has no duty to defend BCG against the Henderson Suit. The individual claims asserted in the Henderson Suit arise out of offenses that were committed long after the Liberty Mutual policies expired. The class action claims do not seek damages because of any covered "personal or advertising injury", but rather

35498200.1

because of alleged failure to provide statutorily required notices and disclosures to the class members themselves. BCG cannot meet its burden to prove that the Henderson Suit triggers a duty to defend under the Liberty Mutual policies. In addition, the exclusions in the Liberty Mutual policies for Violation of Statutes and for Employment-Related Practices preclude any duty to defend.

DATED: November 26, 2013

LIBERTY MUTUAL FIRE INSURANCE
COMPANY

By: /s/ Gary R. Reinhardt
Gary R. Reinhardt  VSB# 32781
COUNSEL FOR PLAINTIFF
KALBAUGH PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Gary.Reinhardt@kpmlaw.com

John N. Love (pro hac vice)
Robins, Kaplan, Miller & Ciresi, LLP
800 Boylston Street, 25th Floor Boston,
Massachusetts  02199 (617) 267-2300
(617) 267-8288 (fax)
JNLove@rkmc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November, 2013, I filed a true and accurate copy of the foregoing electronically with the Clerk of Court using the CM/ECF system, which will cause a copy of the same to be sent to all counsel and parties of record.

/s/ Gary R. Reinhardt
Gary R. Reinhardt  VSB# 32781
COUNSEL FOR PLAINTIFF
KALBAUGH PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Gary.Reinhardt@kpmlaw.com

35498200.1