IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Virginia

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

    Plaintiff/
    Counterclaim Defendant,

v.                                            Civil Action No. 3:13cv375

GENERAL INFORMATION
SERVICES, INC. et al.,

    Defendants/
    Counterclaim Plaintiffs.

**MEMORANDUM OPINION**

This matter is before the Court following a bench trial. For the reasons set forth below, judgment will be entered in favor of Liberty Mutual Insurance Company ("Liberty Mutual") declaring that it has no insurance obligations.

**PROCEDURAL BACKGROUND**

Liberty Mutual filed this diversity action seeking declaratory relief against General Information Services, Inc. ("GIS") and E-Backgroundchecks.com, Inc. ("BGC") (collectively "BGC"). BGC is a subsidiary of GIS, and both are insured under the Liberty Mutual policies here at issue. BGC[1] also is the named defendant in Henderson v. Backgroundchecks.com, Civil Action No. 3:13cv29, an

---

[1] GIS is not named as a defendant in the Henderson Suit.

action brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "Henderson Suit").

In its First Amended Complaint ("FAC"), Liberty Mutual requests a declaration "that Liberty Mutual has no duty to defend Defendants under the Policies for the Henderson Suit, or in the alternative, that any duty to defend by Liberty Mutual is limited by the terms, conditions, exclusions, and limitations of the Policies" that are identified in the FAC and will be addressed subsequently. (FAC, Docket No. 31, at 21.)[2] BGC filed a counterclaim that is essentially the mirror image of Liberty Mutual's FAC. There, BGC alleges that Liberty Mutual breached "its duty to defend BGC with respect to the Henderson Suit," and seeks specific performance, damages, and other relief. BGC also seeks a declaration "that Liberty Mutual is legally obligated under the terms and provisions of the Liberty Mutual Policies to defend Defendants' interests in connection with the Henderson Suit."

---

[2] In Paragraph 82(g) of its FAC, Liberty Mutual asserted that it might also rely on unspecified "additional terms, conditions, limitations and exclusions." Thereafter, Liberty Mutual stipulated that it would not rely on any unspecified policy provisions unless further amendments of the complaint in the Henderson Suit raised new insurance issues that were not raised by the Second Amended Class Complaint in the Henderson Suit (Docket No. 35 in Civil Action No. 3:13cv29). (Stip. II, 1 (Docket No. 60).) By the time of trial, no further amendments had been made in the Henderson Suit. Hence, there are no policy provisions now at issue other than those herein addressed. Also, all claims relating to the two umbrella excess liability policies issued to BGC by Liberty Mutual have been withdrawn by the parties. (Stip. I, A; Stip. II, 9.)

(Second Amended Counterclaims of General Information Services, Inc. and E-Backgroundchecks.com, Inc., Docket No. 42, at 17-18.)

The action was tried by the Court sitting without a jury. The parties filed an Omnibus Set of Stipulations (Docket No. 60), and agreed on fourteen exhibits. At the bench trial, the parties presented no additional evidence, but argued their respective legal positions based on their briefs and the Omnibus Set of Stipulations ("Stip."), together with fourteen exhibits (Exhibits 1-16, with Exhibits 3 and 4 withdrawn). The Omnibus Stipulations and the Exhibits constitute the record.

This action implicates two general commercial liability (GCL) policies: one for the period 2007-2008 (Ex. 1) and one for 2008-2009 (Ex. 2).[3] For the purposes of today's case, the policies are the same. Thus, the parties have stipulated that:

> For the purpose of determining whether Liberty Mutual has a duty to defend Defendants against the Henderson Suit, it is sufficient to determine whether, upon consideration of the allegations of the [Henderson SACC], Liberty Mutual has a duty to defend under the CGL policy for the period 2008-2009. If the Court rules that a duty to defend exists pursuant to the 2008-2009 CGL policy, then a judgment shall be entered that Liberty Mutual also has a duty to defend under the 2007-2008 CGL policy. Conversely, if the Court rules that there is no duty to defend under the 2008-2009 CGL policy, then a judgment shall be entered

---

[3] Originally, the litigation also involved two umbrella policies as well. The parties have withdrawn that issue, and it will be neither further examined nor decided.

> that Liberty Mutual also has no duty to defend under the 2007-2008 CGL policy.

(Stip. II, 4.)

## BACKGROUND

The request for declaratory relief filed by Liberty Mutual and BGC's counterclaim arise from their differing views of what is alleged in the Henderson Suit and how those allegations affect Liberty Mutual's obligation to provide a defense to BCG in the Henderson Suit. It thus is necessary to understand what is alleged in the Henderson Suit.

The operative complaint in the Henderson Suit is the Second Amended Class Complaint ("Henderson SACC")(Ex. 7). The Henderson SACC asserts three claims: two class claims (Counts I and II) and an individual claim (Count III) that is asserted on behalf of several individual plaintiffs.

In Count I, the Henderson SACC alleges that BGC violated 15 U.S.C. § 1681k(a)(1) because BGC "did not provide Plaintiffs and other similarly situated consumers timely and lawful notice that it was furnishing an employment purposed consumer report at the time it di so." (Ex. 7, ¶ 4 & Count I). In Count II, the Henderson SACC alleges that BGC violated 15 U.S.C. § 1681g(a) because, when the plaintiffs requested the reports that BGC provided to prospective employers and "a list of all inquiries made to [BGC] for their reports," BGC did not "disclose the

4

inquiries for reports." (Ex. 7, ¶ 5 & Count II). In Count III of the Henderson SACC, it is alleged that BGC violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports that BGC furnished to the prospective employers of individual plaintiffs (Thomas, Johnson and Edwards).

BGC contends that Liberty Mutual is obligated to defend BGC as to all claims in the Henderson Suit. Liberty Mutual says that it has no duty to defend the individual claims (Count III) because the conduct on which those claims is based occurred in 2011 and 2012, more than two years after the applicable Liberty Mutual policy expired. As to the class claims (Counts I and II), Liberty Mutual contends that, because of the nature of the alleged injuries to the class, the policy, by its terms, does not provide coverage.[4]

## DISCUSSION

### I. Legal Standard

The parties agree that the law of South Carolina controls the analysis of all policy issues. Under South Carolina law, "the obligation of a liability insurance company to defend and indemnify is determined by the allegations in the complaint."

---

[4] Alternatively, says Liberty Mutual, there are policy exclusions that foreclose coverage for the class claims.

5

Collins Holding Corp. v. Wausau Underwriters Ins. Co., 666 S.E.2d 897, 899 (S.C. 2008). "If the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend." Id. The insured must show that the underlying complaint creates a "reasonable possibility" of coverage under the insurance policy. Gordon-Gallup Realtors Inc. v. Cincinnati Ins. Co., 265 S.E.2d 38, 40 (S.C. 1980). "Questions of coverage and the duty . . . to defend a claim brought against its insured are determined by the allegations of the third party's complaint." Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1994), aff'd, 468 S.E.2d 304 (S.C. 1996). If the alleged acts create "a possibility of coverage under an insurance policy, the insurer is obligated to defend." Id. "The burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract." Sunex Int'l, Inc. v. Travelers Indem. Co., 185 F. Supp. 2d 614, 617 (D.S.C. 2001)(internal citation omitted). "The insurer bears the burden of establishing exclusions to coverage." Id. (internal citation omitted). If a complaint includes both covered and non-covered claims, "the inclusion of some non-covered claims does not abrogate an insurer's duty to defend when a complaint raises claims covered by the policy." Isle of Palms Pest Control Co., 459 S.E.2d at 319. "Under South Carolina law, insurance policies are subject

to the general rules of contract construction." Id. (internal citation omitted). These principles guide the resolution of the request for declaratory judgment and the counterclaim. And, as the parties agree, the analytical process is to compare the allegations in the Henderson SACC with the policy provisions that, according to BGC, animate the duty to defend.

## II. The Liberty Mutual Policies

BGC's claim for a defense under the Liberty Mutual Policies is based on the coverage provided therein for "personal and advertising injury." (Ex. 2, at 10, Coverage B). "Personal and advertising injury" is defined to mean "injury . . . to the feelings and the reputation of a natural person . . . caused by an offense arising out of your business . . . ." (Ex. 2, at 12, item 2a.) It also includes injury arising out of certain enumerated conduct, including "oral or written publication of material that slanders or libels a person . . . ." (Ex. 2, at 13, item 2b(4).) The policies expressly require the offenses to have been "committed in the coverage 'territory' during the policy period." (Ex. 2, at 10, item 1b.)

## III. The SACC Allegations and the Policy Language

Because BCG's coverage theory for the class claims in Counts I and II depends on the nature of the damages sought by the individual plaintiffs in Count III, it is helpful first to

7

assess the allegations in the Henderson SACC respecting the individual claims in Count III. There, the individual plaintiffs allege that BGC's failure to follow procedures to assure maximum accuracy in the consumer reports caused the plaintiffs "actual damages, including . . . loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress." (Ex. 7, ¶ 86). Liberty Mutual rightly acknowledges that the kind of injury claimed by the individual plaintiffs in Count III fits within the scope of the "personal and advertising" provision of its policy.

However, according to Liberty Mutual, the policy nonetheless does not afford coverage because the conduct that is alleged to have caused those injuries occurred more than two years after the policy expired. BGC admits that to be so.

Nonetheless, says BGC, there is coverage for the individual claims because the class claims are alleged to have occurred within the period encompassed by the policy and the Henderson SACC alleges that the injuries sustained by the individual plaintiffs are typical of the injuries suffered by the class. In BGC's view, the fact that the Henderson SACC pleads that the individual injuries are typical of the injuries suffered by the class also means that there is coverage for the class claims (Counts I and II).

The principal problem with BGC's theory is that the class counts (Counts I and II) do not allege that the class suffered the same kinds of injuries as claimed by the individual plaintiffs in Count III. A comparison of the allegations about the injuries proves the point.

In Count III, the individual plaintiffs seek "actual damages, including . . . loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress." (Henderson SACC, ¶ 86.)[5] And, it is those damages that clearly fall within the coverage terms "personal and advertising injury." In Counts I and II of the Henderson SACC, the plaintiffs do not seek actual damages. Rather, they claim "statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorney fees and costs pursuant to § 1681n." (Henderson SACC, ¶ 69 (Count I); ¶ 83 (Count II)).

Thus, a comparison of the types of damages sought reflects that the class damages asserted in Counts I and II do not include actual damages whereas Count III clearly seeks actual damages and goes to some length to explain what those actual damages are. Statutory and punitive damages are not encompassed within the coverage term "personal and advertising injury."

---

[5] In paragraph 88, it is said that the three individual plaintiffs seek "actual damages and/or statutory damages, punitive damages, costs and attorney's fees."

9

Indeed, BGC does not even argue that damages of that description fit within the coverage terminology. In fact, that is why BGC finds it necessary to rely on the notion that there is coverage because, according to BGC, in Counts I and II, the plaintiffs say that the injuries sustained by the individual plaintiffs are typical of those sustained by the class.

BGC bases that world view of coverage on the language of the so-called "typicality" paragraphs in the class claims (Henderson SACC, ¶ 62 (Count I); ¶ 75 (Count II)).[6] BGC's theory rests on the first sentence of the typicality paragraphs which reads: "Plaintiffs' claims are typical of the claims of each class member." (Defendants' Pretrial Brief (Docket No. 49), at 5)(emphasis added). However, that text clearly refers to "claims," not to damages or injuries. Thus, BGC's threshold premise is wrong. Moreover, the next sentence in the typicality paragraphs reads: "Plaintiffs seek only statutory and punitive damages." Taken as a whole, the allegations of the "typicality" paragraphs cannot reasonably be read to assert, on behalf of the classes (in Counts I and II), the actual damages that are asserted on behalf of the individual plaintiffs in Count III and that constitute a basis for coverage within the policy term "personal and advertising injury." Thus, the text of the

---

[6] Fed. R. Civ. P. 23(a)(3) requires that "the claims or defense of the representative parties [must be] typical of the claims or defenses of the class."

10

"typicality" paragraphs in the Henderson SACC simply does not support BGC's coverage theory.

BGC's next line of attack rests on the text of the class definition in one subclass in Count I of the Henderson SACC: the so-called "1681k Accuracy Sub-Class." That definition reads:

> All natural persons residing in Virginia, North Carolina, South Carolina, Maryland or West Virginia (a.) who were the subject of a report sold by Defendant to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment (c.) [sic] within five years next preceding the filing of this action and during its pendency, (d) [sic] when a manual review of the record would reveal that the identity associated with the public record does not match the identity of the class member about whom the report was furnished (e.) [sic] to whom Defendant did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

Henderson SACC, ¶ 59 (Count I).

According to BGC, this text means that the subclass is seeking damages for the same kind of report inaccuracies that form the basis of the individual claim in Count III and that, therefore, this subclass is also seeking the same kind of actual

11

damages sought by the individual plaintiffs in Count III. That theory fails at the outset because the 1681k Accuracy Sub-Class bases its liability claim on § 1681k, not on § 1681e(b), the maximum possible accuracy provision, on which the individual plaintiffs base their claim in Count III. Moreover, the class definition read as a whole makes it clear that the predicate for liability in Count I is the failure of BGC to provide the class with the notice required by § 1681k. Finally, the damage allegations of Count I, wherein lies the 1681k Accuracy Sub-Class, quite clearly seek only statutory and punitive damages.

For the foregoing reasons, BGC's contention that the allegations of the "typicality" paragraphs in Counts I and II and the class definition of the 1681k Accuracy Sub-Class in Count I do not animate the duty to defend. Given that determination, it is unnecessary to address the exclusions.

## CONCLUSION

For the reasons set forth herein, the Court declares that, under the Liberty Mutual Policies, Plaintiff and Counterclaim Defendant Liberty Mutual Fire Insurance Company has no duty to defend Defendants and Counterclaim Plaintiffs General Information Services, Inc. or E-Backgroundchecks.com, Inc. in the Henderson Suit. For the same reasons, the Court also declares that Plaintiff

and Counterclaim Defendant Liberty Mutual Fire Insurance Company did not breach the Liberty Mutual Policies.

Judgment shall be entered in favor of Plaintiff and Counterclaim Defendant Liberty Mutual Fire Insurance Company and against Defendants and Counterclaim Plaintiffs General Information Services, Inc. and E-Backgroundchecks.com, Inc. on Liberty Mutual's FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT (Docket No. 31) and on the SECOND AMENDED COUNTERCLAIMS OF GENERAL INFORMATION SERVICES, INC. AND E-BACKGROUNDCHECKS.COM, INC. (Docket No. 42).

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 20, 2014